**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KATHLEEN FLYNN & DAN FLYNN, h/w** | |
| *Plaintiff,* | **Case No.:** |
| **v.** | |
| | **ACTION FOR DAMAGES** |
| **NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK** | **COMPLAINT WITH JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT

**COME NOW**, Plaintiffs, Kathleen Flynn & Dan Flynn, h/w and bring this action against Defendant, National Railroad Passenger Corporation a/k/a Amtrak, for personal injuries and damages suffered by Plaintiffs, Kathleen Flynn and Dan Flynn, and alleges as follows:

**1.** Plaintiffs, Kathleen Flynn and Dan Flynn, h/w, are adult individuals and and citizens of the Commonwealth of Pennsylvania, residing 2002 Kestrel Court, Lancaster, PA 17603.

**2.** At all times relevant hereto, Plaintiffs, Kathleen Flynn and Dan Flynn, were lawfully married.

**3.** Defendant, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), is a corporation organized and existing under the laws of the United States of America with its principal place of business located at 60 Massachusetts Avenue, Washington, D.C. 20002.

**4.** At all times relevant hereto, Defendant Amtrak purposefully established significant contacts in Pennsylvania, and has carried out, and continues to carry out, substantial, continuous and systematic business activities in Pennsylvania.

5.     At all times relevant hereto, Defendant Amtrak was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency, authority, and/or employment with Defendant Amtrak.

6.     The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant Amtrak's contacts and activities in the Commonwealth of Pennsylvania, namely, the ownership, control, and operation of Amtrak Keystone Service Train 669 and the Amtrak Lancaster train station located at or about 53 McGovern Ave., Lancaster, PA 17602.

7.     At all times relevant hereto, Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and safe operation of the locomotive and passenger cars on the Amtrak Keystone Service Train 669 (the "Train").

8.     At all times relevant hereto, Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and safe operation of the Amtrak station located at or about 53 McGovern Ave., Lancaster, PA 17602 (the "Lancaster Station").

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 exclusive of interest and costs, this is an action in which Plaintiff and Defendant Amtrak are citizens of different states, and Defendant Amtrak has certain minimum contacts with the Commonwealth of Pennsylvania such that the maintenance of the suit in this District does not offend traditional notions of fair play and substantial, and because the injuries and damages alleged herein arise out of, and are related to, Defendant Amtrak's contacts and activities in the Commonwealth of Pennsylvania.

10.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1349, as the United States is the owner of more than one-half of Defendant Amtrak's capital stock.

1

11.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 as a substantial portion of the acts, omissions, and events giving rise to Plaintiffs' claims occurred in and around this District.

12.     On July 15, 2023, Plaintiff, Kathleen Flynn, suffered devastating injuries when she fell into the gap between train cars on the subject Amtrak Train while disembarking at the Lancaster Station.

13.     When Plaintiff, Kathleen Flynn, fell between the train cars of the subject Amtrak Train she fell to the tracks below and suffered devastating and severe injuries as described further herein.

14.     Due to the location where Plaintiff, Kathleen Flynn, fell, she could not be safely rescued from the tracks while the subject Amtrak Train was above her, and she lay suffering on the tracks for a significant period of time. Ultimately, Plaintiff was pulled under the platform in order to allow the subject Amtrak train to be moved and for Plaintiff to be rescued.

15.     Plaintiff, Dan Flynn, was present on the platform at the Lancaster Station and witnessed the entirety of these horrifying events and the injuries suffered by his wife, Plaintiff, Kathleen Flynn.

16.     As the owner and operator of the subject Amtrak Train, Defendant, Amtrak, had a duty to ensure the Train was safe for passengers, including Plaintiff, especially as they embarked and/or disembarked the Train.

17.     As the owner and operator of the Lancaster Station, Defendant Amtrak had a duty to ensure premises of the Lancaster Station was safe for train passengers, visitors, and business invitees, including Plaintiff, especially with regard to passengers being able to safely embark and/or disembark trains at the station.

18.     As the owner and operator of the subject Amtrak Train, Defendant, Amtrak, had a duty to ensure that all passengers and business invitees, including Plaintiff, were provided with safe means to embark and/or disembark its trains, including the subject Amtrak Train.

19.     As the owner and operator of the Lancaster Station, Defendant Amtrak had a duty to ensure all passengers, visitors, and business invitees, including Plaintiff, were provided with safe means to embark and/or disembark its trains, including the subject Amtrak Train.

20.     As the owner and operator of the subject Amtrak Train, Defendant, Amtrak, knew or should have known that the gap between the train cars presented a fall hazard for passengers attempting to embark and/or disembark the train.

21.     The industry has widely recognized the fall hazard presented by the gap between rail cars and the effectiveness of between-car barriers in preventing passengers from being injured by this fall hazard.  In fact, in a September 15, 2015 letter, the United States Department of Transportation acknowledged the need to mitigate the hazard presented by the gap between rail cars and that, "[i]n a level boarding/platform environment without between-car barriers, the hazard of falling to the trackbed exists" and that "[b]etween car barriers have been shown to be an effective method for reducing the likelihood of passengers falling between two rail cars."

22.     Despite this knowledge, Amtrak failed to provide any between-car barriers or other safety devices or mechanisms to protect passengers from falling between the train cars.

23.     As the owner and operator of the Lancaster Station, Defendant, Amtrak, knew or should have known that the gap between Amtrak train cars was unguarded and thus presented a fall hazard to passengers attempting to embark and/or disembark Amtrak trains once said trains arrived at Lancaster Station and thus presented a dangerous condition on or of the premises.

24.     Despite this knowledge, Defendant, Amtrak, as the owner and operator of the Lancaster Train station and its premises, failed to provide any barriers or safety devices of any kind to protect passengers attempting to embark and/or disembark the Amtrak trains from falling between the train cars.

25.     Defendant Amtrak, as both the owner and operator of the subject Amtrak Train and as the owner and operator of the Lancaster Station and its premises, knew or should have known that failing to ensure that passengers, visitors, and business invitees of the Amtrak Train and Lancaster Station, including Plaintiff, were provided with a safe means to embark and/or disembark the train would subject those passengers, visitors, and business invitees to an unreasonable risk of harm, severe injury and/or death.

26.     Train passengers falling between train cars while attempting to embark and/or disembark the train is or should be a known hazard to Defendant Amtrak, as both the owner and operator of the subject Amtrak train as well as the owner and operator of the Lancaster Station.

27.     Defendant Amtrak knew or should have known that failing to equip the Train with appropriate devices to prevent, deter, or warn passengers, visitors, and/or business invitees from falling into the gap between the train cars would subject those passengers, visitors, and business invitees, including Plaintiff, to an unreasonable risk of harm, severe injury and/or death.

28.     At all relevant times, Defendant Amtrak, as both the property owner of the Lancaster Station and its premises and as a common carrier, owed the highest duty of care to Plaintiff, Kathleen Flynn, and was responsible to ensure Plaintiff was provided safe means to embark and disembark the subject Amtrak Train and that she was protected from the known fall hazard presented by the gap between train cars.

29.     Defendant Amtrak failed to fulfill its aforementioned duties and caused the catastrophic injuries suffered by Plaintiff, Kathleen Flynn, and the damages claimed herein by Plaintiffs.

30.     As a direct and proximate result of Defendant Amtrak's carelessness and negligence, Plaintiff, Kathleen Flynn, suffered serious, severe, disabling, and excruciating injuries including, but not limited to, multiple right-sided rib fractures from ribs 3-10, right-sided collapsed lung, spinal compression fractures to T3 and T5, L2-L4 transverse process fractures, subcutaneous bruising along the right posterior flank, liver laceration, distended gallbladder, pericholecystic edema, a head injury, sepsis, pneumonia, tachycardia, insertion of a chest tube, ventilator dependency for multiple days, and blood transfusions; and other injuries; numerous surgical procedures; physical pain and suffering and mental and emotional pain and suffering; unrelenting chronic physical, mental, and emotional pain and suffering; scarring and disfigurement; other orthopedic, neurological, psychological, and psychiatric injuries.  Plaintiff has further suffered a loss of life's pleasures, past, present, and future, a loss of earnings and wages and loss of earnings capacity, past, present, and future.  Plaintiff has incurred and will continue to incur hospital, medical, and rehabilitation expenses, including medical equipment, supplies, and other medical care and treatment; other orthopedic, neurological, psychological, and psychiatric injuries, the full extent of which is yet to be determined and some or all of which may be permanent in nature.

31.     As a direct and proximate result of Defendant Amtrak's carelessness and negligence, Plaintiff, Kathleen Flynn, has in the past required, continues to require, and may in the future require medical treatment and care, and has in the past, continues presently, and may in the future incur the costs of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation in an attempt to alleviate and/or cure her conditions.

32.    As a direct and proximate result of Defendant Amtrak's carelessness and negligence, Plaintiff, Kathleen Flynn, has in the past suffered, and continues to suffer, pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life, and other intangible losses.

33.    As a direct and proximate result of Defendant Amtrak's carelessness and negligence, Plaintiff, Kathleen Flynn, has been prevented and will be prevented in the future from performing all of her usual duties, activities, occupations, and avocations and has suffered a loss of earnings and a loss of earning capacity.

34.    At all times material hereto, Plaintiff, Dan Flynn, was and is the lawfully married husband of Plaintiff, Kathleen Flynn, and has in the past and will in the future continue to suffer great pecuniary loss including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium, loss of comfort, loss of counseling and loss of guidance, and have suffered profound psychological and emotional loss.

35.    Plaintiff, Dan Flynn, was present on the platform of the Lancaster Station at the time of the accident and witnessed the horrific events described herein and the injuries suffered by his wife, Plaintiff, Kathleen Flynn, and as a result has suffered significant mental and emotional distress and attendant damages.

36.    Plaintiffs aver that the injures and damages alleged herein were caused solely by the acts of Defendant Amtrak through its shared and/or individual agents, servants, workmen and/or employees as hereinbefore and hereinafter set forth.

37.    Plaintiff, Kathleen Flynn, did not cause and/or contribute to this devastating accident or her injuries set forth herein.

## COUNT I – NEGLIGENCE

## PLAINTIFF, KATHLEEN FLYNN v. DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK

**38.**     All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

**39.**     Plaintiff brings this negligence claim against Defendant, Amtrak, in its capacity as the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and operation of the subject Amtrak Train (Amtrak Keystone Service Train 669) involved in this accident.

**40.**     Defendant, Amtrak, was and is a common carrier and thus owed its passengers, including Kathleen Flynn, the highest duty of care under the law to ensure their safety during their travels, including while embarking and/or disembarking the subject Amtrak Train.

**41.**     Defendant, Amtrak, knew or should have known that the unguarded gap between the train cars on the subject Amtrak Train presented a significant fall hazard that posed a threat to Amtrak's passengers, including Plaintiff, and subjected them to an unreasonable and unacceptable hazard of serious injury and/or death.

**42.**     Defendant, Amtrak, knew or should have known that if the gap between train cars on the subject Amtrak Train were not guarded in any way, passengers, including Plaintiff, were subjected to the risk of falling in between the train cars and getting seriously injured.

**43.**     The industry has widely recognized the fall hazard presented by the gap between rail cars and the effectiveness of between-car barriers in preventing passengers from being injured by this fall hazard.  In fact, in a September 15, 2015 letter, the United States Department of Transportation acknowledged the need to mitigate the hazard presented by the gap between rail cars and that, "[i]n a level boarding/platform environment without between-car barriers, the hazard

7

of falling to the trackbed exists" and that "[b]etween car barriers have been shown to be an effective method for reducing the likelihood of passengers falling between two rail cars."

44.     Despite this aforementioned knowledge, Defendant Amtrak failed to guard and/or protect against the known fall hazard presented by the gap between the train cars of the subject Amtrak Train in any manner whatsoever.

45.     Defendant Amtrak had a duty to ensure all passengers, visitors, and business invitees, including Plaintiff, were provided with a safe way to embark and/or disembark the subject Amtrak Train with protection from falling into the gap between train cars.

46.     Defendant Amtrak, by and through its employees and/or agents, caused the injuries and damages sustained by Plaintiff, Kathleen Flynn, and acted carelessly and negligently through the following actions and/or inactions:

  a. Causing the Train to be in a dangerous condition;
  b. Failing to provide or implement between-car barriers and/or safeguards;
  c. Failing to install between-car barriers;
  d. Allowing the Train to exist without between-car barriers;
  e. Failing to install between-car barriers or protective devices despite knowing that the gap in between train cars presented a significant fall hazard;
  f. Failing to provide a safe way for passengers to embark and/or disembark the subject Amtrak Train without being subjected to the fall hazard presented by the gap between train cars;
  g. Failing to timely and adequately perform maintenance, repairs, and/or upgrades to the subject Amtrak Train;
  h. Failing to warn Plaintiff of the hazard and danger posed by the lack of between-car barriers; and
  i. Failing to maintain the Train in a safe condition.

47.     By reason of the carelessness and negligence of Defendant Amtrak, in its capacity as the owner and operator of the subject Amtrak Train, as aforesaid, Plaintiff, Kathleen Flynn was caused to sustain the serious and permanently disabling injuries described herein.

48.     By conducting itself as set forth above, Defendant Amtrak's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the harm to Plaintiff, Kathleen Flynn.

## COUNT II – NEGLIGENCE

## PLAINTIFF, KATHLEEN FLYNN v. DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK

49.     All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

50.     Plaintiff brings this negligence claim against Defendant, Amtrak, in its capacity as the owner, possessor, and operator of the Lancaster Station and its premises.

51.     Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, owed the highest duty of care to business invitees, including Plaintiff, Kathleen Flynn.

52.     Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, was responsible to ensure that there were no hazardous conditions on the premises.

53.     Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, was responsible to warn all business invitees, including Plaintiff, of hazardous conditions thereon.

54.     Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, was responsible to ensure its business invitees, including Plaintiff, were provided with a safe way to embark and/or disembark trains at the station without risk of falling down onto the tracks while attempting to do so.

55.     Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, knew or should have known that Amtrak trains, including the subject Amtrak Train, did not provide between-car barriers or protective devices of any kind.

9

56.    Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, knew or should have known that because the Amtrak trains that stopped at Lancaster Station, including the subject Amtrak Train, did not provide between-car barriers or protective devices of any kind, its business invitees on the train station platform and those embarking and/or disembarking Amtrak trains would be subjected to a significant fall hazard presented by the gap between train cars.

57.    Despite this knowledge, Defendant, Amtrak, as the owner and operator of the Lancaster Station and its premises, failed to provide any barriers or protective devices whatsoever to protect its business invitees from falling into the gap between the train cars.

58.    Defendant, Amtrak, breached its aforementioned duties and responsibilities.

59.    Defendant Amtrak, by and through its employees and/or agents, caused the injuries and damages sustained by Plaintiff, Kathleen Flynn, and acted carelessly and negligently through the following actions and/or inactions:

a.    Permitting the subject premises to be in a dangerous condition by virtue of the fall hazard presented by the gap between train cars that arrived to the station;

b.    Causing and/or permitting the premises to be in a dangerous condition;

c.    Failing to provide or implement barriers, protective devices, and/or safeguards on the train station platform to protect business invitees from falling between train cars;

d.    Allowing the Lancaster Station platform to exist without barriers, protective devices, and/or safeguards on the train station platform to protect business invitees from falling between train cars;

e.    Failing to maintain the premises in a safe condition;

f.    Failing to warn business invitees of the fall hazard presented by the gap between train cars on trains that arrived to the Lancaster Station;

g.    Failing to provide a safe way for passengers to embark and/or disembark the subject Amtrak Train without being subjected to the fall hazard presented by the gap between train cars;

     **h.**     Failing to timely and adequately perform maintenance, repairs, and/or upgrades to the Lancaster Station; and

     **i.**     Failing to remedy the dangerous and hazardous condition once aware of it.

**60.**     By reason of the carelessness and negligence of Defendant Amtrak, in its capacity as the owner and operator of the Lancaster Station and its premises, as aforesaid, Plaintiff, Kathleen Flynn was caused to sustain the serious and permanently disabling injuries described herein.

**61.**     By conducting itself as set forth above, Defendant Amtrak's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the harm to Plaintiff, Kathleen Flynn.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### PLAINTIFF, DAN FLYNN v. DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK

**62.**     All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

**63.**     This tragic accident suffered by Kathleen Flynn was, by every measure, a traumatic event.

**64.**     Plaintiff, Dan Flynn, was in close proximity to his wife, Kathleen Flynn, when the accident occurred, and had a sensory and contemporaneous observation of the accident that seriously injured his wife and the effects of Amtrak's negligence.

**65.**     Plaintiff, Dan Flynn, was in personal danger of falling between the cars of the Train due to the lack of between-car barriers and/or safeguards.

**66.**     Plaintiff, Dan Flynn, heard, observed, witnessed and perceived the accident which severely injured his wife.

67.     After the hearing, observing, witnessing, and perceiving the accident, Dan Flynn saw, observed, and perceived his wife, Kathleen Flynn's catastrophic and debilitating injuries and trapped under the cars of the Train.

68.     Plaintiff, Dan Flynn, was in the zone of danger caused by Defendant Amtrak's carelessness and negligence.

69.     As a result of having to hear, observe, witness, and perceive this accident suffered by his wife, Kathleen Flynn, Dan Flynn suffered and continues to suffer severe emotional distress, physiological pain, emotional scarring, fear, anxiety, mental anguish, and other debilitating emotional, psychological, and mental injuries, some or all of which manifested as a physical injury, the full extent of which may not have yet been realized.

## COUNT IV – LOSS OF CONSORTIUM

### PLAINTIFF, DAN FLYNN v. DEFENDANT, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK

70.     Plaintiffs incorporate all preceding paragraphs in this Complaint by reference.

71.     Plaintiff, Dan Flynn, is and was at all relevant times the lawfully married husband of Plaintiff, Kathleen Flynn, and as such, is entitled to her society, companionship and services.

72.     By reason of the Defendant Amtrak's carelessness and negligence, as fully set forth above and incorporated by reference as though fully set forth herein, husband-plaintiff Dan Flynn has suffered the loss of consortium and has been deprived of his wife's love, companionship, comfort, affection, society, moral guidance, intellectual strength and physical assistance and loss of the assistance and earnings of plaintiff-wife.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment against

Defendant, Amtrak, and in favor of Plaintiffs, and grant the following relief:

A.    For all compensatory damages, including all economic and noneconomic damages recoverable under the law caused by Defendant Amtrak's negligent conduct.

B.    For all other damages, including incidental and consequential damages, caused by Defendant Amtrak's negligent conduct.

C.    For the maximum interest provided by law on such monetary relief, including, but not limited to, prejudgment interest.

D.    Costs of suit; and

E.    For other such relief as the Court deems proper and just.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all uses triable by right of jury.

Respectfully submitted,

BY:    */s/ Jeffrey P. Goodman*
　　　　JEFFREY P. GOODMAN
　　　　SAMUEL B. DORDICK
　　　　MAX H. DEHON
　　　　**SALTZ MONGELUZZI BENDESKY P.C.**
　　　　One Liberty Place
　　　　1650 Market St., 52nd Floor
　　　　Tel: (215) 496-8282
　　　　jgoodman@smbb.com
　　　　sdordick@smbb.com
　　　　mdehon@smbb.com
　　　　***Counsel for Plaintiffs***

Dated: July 7, 2025

13