**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| KATHLEEN FLYNN & DAN FLYNN, H/W | : CA NO.: 5:25-CV-03434-CH |
| Plaintiffs, | : |
| v. | : |
| NATIONAL RAILROAD PASSENGER CORPORATION A/K/A AMTRAK | : |
| Defendant. | : |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PURSUANT TO F.R.C.P. 12(b)(6) OR, ALTERNATIVELY, F.R.C.P. 56**

Defendant National Railroad Passenger Corporation ("Amtrak"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay Proceedings pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, Rule 56, and in support thereof, sets forth as follows:

## I.     BACKGROUND

On July 7, 2025, plaintiffs filed a Complaint in the United States District Court for the Eastern District of the Pennsylvania. (See plaintiffs' Complaint, attached hereto as Exhibit A). Plaintiffs' complaint alleges that on July 15, 2023, plaintiff Kathleen Flynn was a ticketed passenger on Amtrak Keystone Service Train 669. (See Exhibit A, ¶ 12). Plaintiff Kathleen Flynn purchased a ticket and consented to Amtrak's terms and conditions, including arbitration at time of purchase. (See Passenger Name Reservation ("PNR") record attached hereto at Exhibit B and Amtrak's Terms and Conditions 2.9.22 attached hereto at Exhibit C). When exiting the train car at Lancaster Station, plaintiff Kathleen Flynn fell between two rail cars and fell to the tracks below. (See Exhibit A at ¶ 12).  The Complaint alleges that this incident was witnessed by plaintiff Dan

4913-1662-6264v.3

Flynn, Kathleen's husband, who was a bystander and not a ticketed passenger. (See Exhibit A at ¶ 15). Plaintiff Kathleen Flynn is alleging claims of negligence against Amtrak and Dan Flynn is alleging claims of loss of consortium and negligent infliction of emotional distress. (See Exhibit A, generally). Defendant Amtrak files this instant motion to compel arbitration as all counts in the Complaint are subject to the arbitration agreement that Kathleen Flynn agreed to when purchasing her ticket. Alternatively, Amtrak requests that this Court enter a stay of proceedings as to any claims not subject to arbitration.

## II.     BACKGROUND INFORMATION REGARDING AMTRAK

Amtrak provides intercity passenger rail service to customers throughout the United States. Though authorized by statute, see Rail Passenger Service Act of 1970, Pub. L. No. 91-518, § 301, 84 Stat. 1327, 1330, and "dependent on the government in ways other for-profit corporations are not," Ass'n of Am. R.R.s v. U.S. Dep't of Transp. (Ass'n of American Railroads II), 821 F.3d 19, 32 (D.C. Cir. 2016), Amtrak "is not a department, agency, or instrumentality of the United States Government," 49 U.S.C. § 24301(a)(3). Rather, from its inception, Amtrak has remained "a private, for-profit corporation". See Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co., 470 U.S. 451, 454 (1985); accord Ass'n of American Railroad II, 821 F.3d at 23 ("a for-profit corporation"); see also 49 U.S.C. § 24301(a)(2) ("Amtrak…shall be operated and managed as a for-profit corporation.").

Congress has mandated that Amtrak act "as much like a private business as possible." S. Rep. No. 105-85 at 1 (1997), as reprinted in 1997 U.S.C.C.A.N. 3055, 3055. Amtrak must "use its best business judgment in acting to minimize United States Government subsidies," 49 U.S.C. § 24101(c)(1), including by "reducing management costs." 49 U.S.C. § 24101(c)(1)(E). It also must "maximize the use of its resources." 49 U.S.C. § 24101(c)(12). To do so, Congress has encouraged

Amtrak to "undertake initiatives that are consistent with good business judgment and designed to maximize its revenues and minimize Government subsidies." 49 U.S.C. § 24101(d). Amtrak also may "make and carry out appropriate agreements."  49 U.S.C. § 24305(c)(1).

### III.  KATHLEEN FLYNN'S TICKET PURCHASE FROM AMTRAK

On June 19, 2023, plaintiff Kathleen Flynn purchased her ticket. (See Exhibit B). Amtrak was using version 2.9.22 of its terms and conditions on that date ("Terms and Conditions"). (See Terms and Conditions Version 2.9.22 attached as Exhibit C). Mrs. Flynn agreed to these terms when she purchased her ticket. (See Exhibit B).

To purchase a ticket from Amtrak, whether on the website, mobile website, or app, customers must affirmatively accept Amtrak's Terms and Conditions, which include a mutually binding agreement to arbitrate any claims between the customer and Amtrak ("Arbitration Agreement"). ((See Declaration of Sunil D. Tewari attached as Exhibit D, ¶ 5). Before customers can complete the ticket purchase, they must click a box affirming that they "have read and agree to the terms and conditions, including the binding arbitration agreement." (Id. at ¶ 6). In addition to mentioning specifically the Arbitration Agreement, this provision contains a link directly to the Terms and Conditions.  (See id.)  Only once the customer checks this box can the ticket purchase be completed. (See id. at ¶ 7).

Following the purchase of a ticket, customers are sent an email receipt confirming their ticket purchase, which includes a summary of the Terms and Conditions and states that the "ticket is a contract of carriage which includes specific terms and conditions and a binding arbitration agreement between Amtrak and the ticket holder."  (Id. at ¶ 8). The emailed summary also contains a link to the Terms and Conditions including the Arbitration Agreement. (Id.). While purchasing

her Amtrak ticket on June 19, 2023, plaintiff affirmatively clicked the box stating that she read and agreed to the Terms and Conditions. (Id. at ¶ 10). Amtrak's records demonstrate that plaintiff agreed to version 2.9.22 of the Terms and Conditions, which is attached as Exhibit C. (Id. at ¶ 11). Version 2.9.22 of the Terms and Conditions includes the Arbitration Agreement. (Id. at ¶ 12).

Amtrak's Terms and Conditions state "the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable .…" (See Exhibit C, pp. 43). The Arbitration Agreement is explicit in describing the types of claims to which it applies:

> "[T]his Arbitration Agreement applies, without limitation, to claims … based upon or related to: … tort claims, common law claims … any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury) …. This Arbitration Agreement is governed by the Federal Arbitration Act ("FAA") and evidences a transaction involving commerce. The arbitration will be conducted before a single arbitrator under the Consumer Arbitration Rules of the American Arbitration Association ("AAA") …."

(Id.). Pursuant to her ticket purchase, Mrs. Flynn agreed to arbitrate her claims against Amtrak, and the Court should compel her to submit this matter to binding arbitration in accordance with the Terms and Conditions, including the Arbitration Agreement.

4

## IV.   LEGAL ARGUMENT

### A.  Legal Standard

Amtrak's motion to compel arbitration may be granted under Rule 12(b)(6) when it is apparent on the face of the Complaint and documents relied on in the Complaint that certain claims are subject to an enforceable arbitration clause. See Singh v. Uber Technologies, Inc., 339 F.3d 210, 216 (3d Cir. 2019); Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013). Where arbitrability is not apparent on the face of a complaint, a motion to compel arbitration is judged under the summary judgment standard of Rule 56(a). See Guidotti, 716 F.3d at 774-75.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "establishes a strong federal policy in favor of compelling arbitration over litigation." Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000). Section 2 is the primary substantive provision of the FAA, declaring that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). The United States Supreme Court strongly endorses the enforcement of arbitration agreements, as evidenced, by its decisions in Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 534 (2012), Am. Express Corp. v. Italian Colors Rest., 570 U.S. 228 (2013), and AT&T Mobility LLC v. Conception, 563 U.S. 333, 131 (2011). Arbitration agreements must be "enforce[d] according to their terms." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 61, 66 (2010).

Moreover, the United States Supreme Court has held that state courts "must abide by the FAA, which is 'the supreme Law of the Land,' U.S. Cons, Art. IV, cl. 2, and by the opinions of this Court interpreting that law." Nitro-lift Tech., LLC v. Howard, 568 U.S. 17, 21 (2012). The

5

4913-1662-6264v.3

Supreme Court has further held that a court "may not ... invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." Dr.'s Assocs, Inc. v. Casarotto, 517 U.S. 681, 687 (1996). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). Under the FAA, courts must treat arbitration agreements on "equal footing" with other types of contracts, and rules applicable only to arbitration "or that derive their meaning from the fact that an agreement to arbitrate is at issue" are improper. AT&T Mobility LLC v. Concepion, 563 U.S. 333, 339 (2011). "Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA)." Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 660 (Pa. Super. Ct. 2013); see also Moscatiello v. Hilliard, 939 A.2d 325, 329 (Pa. 2007).

Typically, before compelling arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement. Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005); Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3rd Cir. 2009) (citing Quiles v. Fin. Exch. Co., 879 A.2d 281, 283 n.3 (Pa. Super. Ct. 2005)). As discussed below, Mrs. Flynn entered into a valid agreement to arbitrate her claims, and the claims arising from her incident at Lancaster Station fall within the scope of the Arbitration Agreement.

**B. Plaintiff Kathleen Flynn should be compelled to arbitrate her claims.**

*i. Mrs. Flynn entered into a valid agreement to arbitrate her claims.*

To determine whether the parties agreed to submit any disputes to arbitration, the courts apply "ordinary state-law principles that govern the formation of contracts." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos.

6

950548, 950549, 950646, 584 F.3d 513, 533 (3d Cir. 2009) (citing First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995)). Under Pennsylvania law, the elements of a contractual agreement are: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration. Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002). In this case, there is a valid contract under Pennsylvania law and the claims are within the scope of arbitration.

In purchasing her ticket, plaintiff Mrs. Flynn entered into an internet contract known as a clickwrap agreement which meets the three elements required under Pennsylvania contract law. "A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007). "Although the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" HealthplanCRM, LLC v. AvMed, Inc., 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting Meyer v. Uber Techs. Inc., 868 F.3d 66, 76 (2d Cir. 2017)). "[I]n assessing whether a party manifested an intent to enter a contract, the Court looks not to inward, subjective intent but, rather, to the "extent a reasonable person would apprehend in considering the parties' behavior," HealthplanCRM, 458 F. Supp. 3d at 331-32 (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009)). "[A]n internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 222 (2d Cir. 2016). "Whether the user actually reads the terms to which she assents is immaterial." Zabokritsky v. Jetsmarter, Inc., 19-

7

273, 2019 WL 2563738, *3 (E.D. Pa. June 20, 2019). "And Clickwrap agreements are routinely enforced by the courts." HealthplanCRM, 458 F. Supp. 3d at 334.

Judges in this District have held that clickwrap agreements manifest sufficient agreement to the terms in the contract. See Zabokritsky, 2019 WL 2563738, at *3 (holding that the plaintiff manifested assent to an arbitration agreement by sliding a button to indicate terms of use when renewing her account and checking the box to indicate her acceptance of the membership agreement); Dobbs v. Health IQ Ins. Servs., Inc., No. 21-5276, 2022 WL 2974713, at *6 (E.D. Pa. July 27, 2022) (holding that the plaintiff assented to the defendant's terms of use including the arbitration agreement by entering his contact information and pressing submit).

In this case, Mrs. Flynn clearly manifested an intent to be bound by Amtrak's Terms and Conditions, including the Arbitration Agreement. Specifically, during her purchase, she clicked a box affirming that she had "read and agree to the terms and conditions, including the binding arbitration agreement." (See Exhibit D, ¶¶ 6, 10). Amtrak's Terms and Conditions were made available to plaintiff via link at the time of purchase, and also in a confirmation email sent to plaintiff. (See id., ¶¶ 6, 8).

The second element to establish a contract is met as the terms of the Arbitration Agreement are sufficiently definite enough to be enforced. In Pennsylvania, "[a]n agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy." Peerless Publications, Inc. v. Cnty. of Montgomery, 656 A.2d 547, 552 (Pa. Commw. Ct. 1995). Here, the terms of the Arbitration Agreement are sufficiently definite as they specifically provide a remedy to plaintiff via binding arbitration and a framework for that arbitration proceeding. See Soroko v. ATMOS, Inc., No. 11-6120, 2015 WL

8

5585350, at *5, 2015 U.S. Dist. LEXIS 127317, at *16 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced).

The third element to establish a contract is also met, as there is consideration because both parties agreed to be bound by arbitration. "When both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced." Blair, 283 F.3d at 603.

Thus, there is manifestation of assent, definite terms of the agreement, and consideration. Therefore, under Pennsylvania contract law, there is a valid contractual agreement between Mrs. Flynn and Amtrak.

### ii.    Mrs. Flynn's claims fall within the scope of the Arbitration Agreement

In evaluating the arbitrability of a dispute, the court must determine whether a valid agreement to arbitrate exists and, if so, whether the dispute falls within the scope of the agreement. Kirleis, 560 F.3d at 160 (citing Quiles v. Fin. Exch Co., 879 A.2d 281, 283 n.3 (Pa. Super. Ct. 2005)) (additional citations omitted). The claims brought by plaintiff in this litigation fall within the scope of the Arbitration Agreement, and therefore she should be compelled to submit this matter to binding arbitration.

The Arbitration Agreement provides that the agreement "applies, without limitation, to claims…based upon or related to: … tort claims, common law claims … tickets, services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for

medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury." (See Exhibit C at p. 43).

Plaintiffs' Complaint clearly sets forth claims for Mrs. Flynn's personal injuries and alleges that Amtrak is responsible for those injuries. (See Exhibit A). She claims that Amtrak's alleged negligence caused her injuries and that she has incurred medical expenses. (Id.). These claims clearly fall within the scope of the Arbitration Agreement. Thus, the Court should compel Mrs. Flynn to submit these claims to arbitration.

Federal courts in other districts have granted Amtrak's motions to compel arbitration where Amtrak passengers sought to litigate a claim covered by the Arbitration Agreement included in their ticket purchase. See Zayanderoudi v. National Railroad Passenger Corp., No. TJS-22-2455, 2023 WL 4744746, at *2 (D. Md. July 25, 2023) (granting Amtrak's motion to compel arbitration where plaintiff alleged injuries when she fell off a train onto a platform) (attached hereto as Exhibit E); Simon v. National Passenger Corporation, No. 8:24-CV-2586-TPB-CPT, 2025 WL 326664, at *5 (M.D. Fla. Jan. 29, 2025) (granting Amtrak's motion to compel arbitration of plaintiff's personal injury claims arising from a train collision) (attached hereto as Exhibit F); Tucker v. National Railroad Passenger Corp, 2025 WL 2256152, at *4 (S.D. Fla. Aug. 7, 2025) (granting Amtrak's motion to compel arbitration of plaintiff's personal injury claims arising from a slip and fall at an Amtrak train station after plaintiff exited her Amtrak train) (attached hereto as Exhibit G); see also Abadi v. National Railroad Passenger Corp., No. 1:22-CV-03684 (TNM), 2024 WL 4441737, at *5 (D.D.C. Oct. 7, 2024), aff'd, No. 24-7172, 2025 WL 796106 (D.C. Cir. Mar. 12, 2025) (compelling plaintiff to arbitrate claims of discrimination as outlined in the arbitration agreement agreed to when he bought his ticket). Additionally, District Judge Harvey Bartle, III, of this District recently upheld the validity of a clickwrap arbitration agreement in the context of an

employment contract between Amtrak and the plaintiff. See Hager v. Nat'l R.R. Passenger Corp., 2024 WL 233219, at *3 (E.D. Pa. Jan. 22, 2024) (finding that the Amtrak employee's claims under a Pennsylvania whistleblower statute were subject to an arbitration agreement and all questions of arbitrability should be referred to the arbitrator) (attached hereto as Exhibit H).

Here, Mrs. Flynn unequivocally assented to the Arbitration Agreement during her ticket purchase. Thus, she is required to arbitrate her claims against Amtrak pursuant to the Arbitration Agreement set forth in the Terms and Conditions. Section 2 of the FAA codifies a strong federal policy favoring arbitration, making arbitration provisions "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see AT&T Mobility v. Concepcion, 563 U.S. 333, 339-40 (2011) (noting strong federal policy favoring arbitration requires rigorous enforcement of arbitration agreements). Therefore, as there is a valid contract and Mrs. Flynn's claims in the Complaint fall within the scope of the Arbitration Agreement, all claims relating to Mrs. Flynn alleged injuries on July 15, 2023, should be subject to arbitration.

### C.  Dan Flynn should be required to arbitrate his derivative claims.

Plaintiff Dan Flynn is bringing claims for loss of consortium and negligent infliction of emotional distress arising from the incident at issue and the injuries sustained by Mrs. Flynn. The Arbitration Agreement applies to these claims as Mr. Flynn's claims could not exist without the alleged tortious conduct and injuries that are subject to the Arbitration Agreement.

In analyzing whether a claim falls within the scope of an arbitration provision, the "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001). Here, the factual underpinnings support that Mr. Flynn's claims for loss of consortium and negligent

11

infliction of emotional distress are completely reliant on Amtrak's allegedly tortious actions which are subject to arbitration.

An action for loss of consortium is a derivative claim under Pennsylvania law. Rorrer v. Cleveland Steel Container, 712 F. Supp. 2d 422, 437 (E.D. Pa. 2010) (quoting Scattaregia v. Wu, 495 A.2d 552, 553 (Pa. Super. Ct. 1985)). A loss of consortium claim is derivative in nature and must be dismissed if the claim from which it is derived is dismissed. Petrocelli v. Daniel Woodhead Co., A Subsidiary of Woodhead Indus., Inc., 993 F.2d 27, 30 (3d Cir. 1993). The Third Circuit has determined that an arbitration clause "providing for the arbitration of all matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable." Medtronic Ave. Inc. v. Cordis Corp., 100 F. App'x 865, 868 (3d Cir. 2004) (compelling arbitration where broad clause governed "any dispute, claim, or controversy arising from or relating to this Agreement or alleged breaches thereof").

The Eastern District of Pennsylvania has previously determined that loss of consortium claims are arbitrable when they arise out of or relate to the claims that are subject to the arbitration agreement. Troshak v. Terminix Int'l Co., L.P., No. CIV. A. 98-1727, 1998 WL 401693, at *6 (E.D. Pa. July 2, 1998). In Troshak, the plaintiffs raised a loss of consortium claim relating to defendant's failure to correctly mix and apply termiticides. Id. Plaintiffs brought claims of negligence which arose out of the agreement with the defendant; the agreement stated "[t]he Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration." Id. The court found that the loss of consortium claim was directly related to the negligence claims found in counts one and two of the complaint and the derivative nature of this claim brought it within the arbitration provision's scope. Id.

12

Just as with the contract in <u>Troshak</u>, the Arbitration Agreement in this case covers Mr. Flynn's claim for loss consortium, making it subject to arbitration. Specifically, the Arbitration Agreement States that all claims based on or related to the tort claims, personal injuries and loss of consortium arising out of any personal injury should be subject to arbitration. (<u>See</u> Exhibit C at p. 43). Indeed. Mr. Flynn cannot recover for loss of consortium if Mrs. Flynn is not successful in her claims against Amtrak.

Additionally, Dan Flynn's claim of negligent infliction of emotional distress should be subject to arbitration as it is reliant on a finding of negligence against Amtrak, the same as Mrs. Flynn's cause of action against Amtrak. "In order to maintain a claim for negligent infliction of emotional distress, there must be an underlying tort." <u>Maldonado v. Walmart Store No. 2141</u>, No. 08-3458, 2011 WL 1790840, at *16 (E.D. Pa. May 10, 2011); <u>see also</u> <u>Brezenski v. World Truck Transfer, Inc.</u>, 755 A.2d 36, 45 (Pa. Super, Ct. 2000) ("Absent a finding of negligence, a negligent infliction of emotional distress claim cannot survive."). As stated above, the arbitration agreement in this case governs claims that are based on or related to common law tort claims arising out of any personal injury sustained by an Amtrak passenger. (<u>See</u> Exhibit C at p. 43). Mr. Flynn's claims of negligent infliction of emotional distress are based on the "contemporaneous observation of the accident that seriously injured his wife." (<u>See</u> Exhibit A at ¶ 64). Therefore, Mr. Flynn's claims should be sent to arbitration as they arise from the same alleged negligent act as Mr. Flynn's claim.

Further, Mr. Flynn's claims should be arbitrated with Mrs. Flynn's claims in the interests of furthering judicial economy and reducing expenses to all parties. Doing so will reduce the drain on this Court's resources as well as upon those selected to sit on a jury, and will avoid duplicative efforts and having two sets of factfinders separately determine claims (one derivative of the other) arising from the same event.

13

**D. Any questions of arbitrability should be delegated to the arbitrator.**

If plaintiffs raise any argument as to the arbitrability of any of the claims, that determination must delegated to the arbitrator. Typically, questions of arbitrability are decided by the court. However, when the parties' contract delegates the arbitrability question to an arbitrator, the arbitrator must determine whether the dispute falls within the scope of the agreement. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019); see also Richardson v. Coverall N. Am., Inc., 811 F. App'x 100 (3d Cir. 2020) (holding franchise agreement effectively delegated issue of arbitrability to arbitrator by the clear terms of the contract); Zabokritsky v. Jetsmarter, Inc., 19-273, 2019 WL 2563738, *3 (E.D. Pa. June 20, 2019) (stating that all questions of arbitrability were to be sent to the arbitrator in accordance with Consumer Arbitration Rules of the American Arbitration Association (AAA) governing the arbitration agreement).

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc., 586 U.S. at 69 (explaining that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue"). In Zayanderoudi, the District Court of Maryland found that Amtrak's Arbitration Agreement clearly and unmistakably delegated the question of arbitrability to the arbitrator. 2023 WL 4744746, at *4 (D. Md. July 25, 2023) (attached as Exhibit E).

Pursuant to the Arbitration Agreement in this case, any questions regarding the arbitrability should be sent to the arbitrator pursuant to the rules of the American Arbitration Association. (See Exhibit C at pg. 43). The Arbitration Agreement states that "[t]he arbitration will be conducted before a single arbitrator under the Consumer Arbitration Rules of the American Arbitration Association (AAA)." (Id.) Commercial Rule 7(a) provides: "The arbitrator shall have the power

14

4913-1662-6264v.3

to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures,* Rule 7(a).

Per this explicit language, defendant Amtrak respectfully requests that this Motion to Compel Arbitration be granted as all the claims are arbitrable and any argument that claims are not arbitrable should be submitted to the arbitrator. There is clear evidence that the parties agreed that questions regarding the scope of arbitrability would be determined by the arbitrator.

### E. All claims should be sent to arbitration and this case should be dismissed or stayed.

Plaintiffs' claims should be sent to arbitration and both Kathleen and Dan Flynn's causes of action should be dismissed; alternatively, Mr. Flynn's cause of action should be stayed pending disposition of Mrs. Flynn's arbitration. Ideally, as discussed above, both plaintiffs' claims should be tried as a single arbitration. When all claims in an action are subject to arbitration, a court may dismiss the action instead of staying it. See Dumont Aircraft Charter, LLC v. Valvano, 672 F. Supp. 3d 1, 13 (M.D. Pa. 2023) (citing Seus v. John Nuveen Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998)) (stating that an action may be dismissed where all the claims are arbitrable); see also Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991) (finding that both claims in the complaint were subject to arbitration and dismissal was appropriate as there was no live controversy before the court). Section 3 of the FAA provides that, on application of one of the parties, the court shall stay the action until such arbitration has been conducted in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3. When a federal court finds that a dispute is subject to arbitration and

15

a party has requested a stay of the court proceedings pending arbitration, the FAA compels the court to stay the proceeding. Smith v. Spizzirri, 601 U.S. 472, 479 (2024).

To the extent that the Court does not compel arbitration as to all claims in the Complaint, Amtrak respectfully requests that any remaining claims be stayed, pending the results of the arbitration proceeding. "In some cases … it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court ... as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n. 23 (1983). A court may stay a case "to abide the outcome of another [proceeding] which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL–CIO, 544 F.2d 1207, 1215 (3d Cir. 1976).

In Allstate Ins. Co. v. Toll Bros. Inc., Judge Joseph F. Leeson of this District compelled arbitration of the plaintiff's claims against one defendant pursuant to an arbitration agreement, and stayed the plaintiff's claims against two additional defendants pending the outcome of the arbitration, as the claims against the additional defendants were not subject to the arbitration agreement. 171 F. Supp. 3d 417, 436, n. 28 (E.D. Pa. 2016) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 21, n. 23). In ordering the stay, Judge Leeson stated that "the factual disputes between plaintiff and all three defendants are intertwined and there is a potential for inconsistent rulings." 171 F. Supp. 3d at 436, n. 28. In determining whether a stay should be granted, courts "must weigh competing interests," Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936), considering factors such as the risk of prejudice to the non-moving party, potential hardship or inequity to the proponent of the stay, and interests in judicial economy and efficiency. Medversant Techs., LLC v. Leverage Health Sols., LLC, 114 F. Supp. 3d 290, 299 (E.D. Pa. 2015)

16

Given that all claims arise in this case from the same alleged conduct on the part of Amtrak, the arbitration proceeding will permit the parties to fully investigate the liability issues in this case and the alleged damages at issue. Proceeding with arbitration and staying the litigation as to any claims not subject to arbitration will conserve judicial resources and avoid the risk of inconsistent rulings. In addition, a stay will enable the parties to evaluate the claims and defenses and potentially pursue amicable resolution. Staying any remaining claims in this litigation will also be more cost-effective for the parties, as they will be able to focus on one proceeding rather than litigating two separate proceedings at the same time.

## V.    CONCLUSION

Plaintiffs' claims against Amtrak are subject to binding arbitration pursuant to the Arbitration Agreement. This is a valid and enforceable agreement pursuant to Pennsylvania contract law and plaintiffs' claims fall within the scope of the arbitration agreement. Defendant Amtrak respectfully requests that this Motion to Compel Arbitration be granted.  To the extent any claims are not subject to arbitration, Amtrak respectfully requests a stay of this litigation.

Respectfully submitted,

/s/ Mark Derner
Mark Derner, Esq.
Landman Corsi Ballaine & Ford P.C.
Attorney for Defendant
National Railroad Passenger Corporation
("Amtrak")

Dated: September 8, 2025

17

4913-1662-6264v.3