IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN FLYNN, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO. 25-3434 |
| | : | |
| NATIONAL RAILROAD | : | |
| PASSENGER CORPORATION | : | |
| A/K/A AMTRAK | : | |
| | : | |

MEMORANDUM OPINION

**Henry, J.**                                                                                      **May 7, 2026**

This case is before the Court on Defendant National Railroad Passenger Corporation's ("Amtrak") Motion to Compel Arbitration (ECF No. 10) (the "Motion") ("Mot."). Upon consideration of the Motion, Plaintiffs' Opposition thereto (ECF No. 11) ("Opp."), and Amtrak's reply in further support of the Motion (ECF No. 12) ("Reply"), I will grant the Motion.

## I.    BACKGROUND

This is a personal injury case brought by Plaintiffs Kathleen and Dan Flynn, husband and wife. Plaintiffs allege that on July 15, 2023, Ms. Flynn suffered injuries after she fell into a gap between train cars on an Amtrak train owned or operated by Defendant while she was disembarking at an Amtrak station in Lancaster, Pennsylvania, which is also owned or operated by Defendant. *See* ECF No. 1 ("Compl.") at ¶¶ 7-8, 12. Mr. Flynn was present on the platform at the station and witnessed the entirety of Kathleen Flynn's fall. *Id.* at ¶ 15. Kathleen Flynn brings causes of action against Amtrak for negligence related to the fall hazard presented by the gap between rail cars and related to its duty as owner and operator of the Lancaster station (Counts I and II). Dan Flynn brings causes of action for negligent infliction of emotional distress related to

1

witnessing his wife's fall and being in personal danger of falling himself (Count III) and loss of consortium (Count IV).

Plaintiffs brought suit in this Court on July 7, 2025.  On September 8, 2025, Amtrak moved to compel arbitration, arguing that when Ms. Flynn purchased her Amtrak ticket, she agreed to terms and conditions that included an agreement that any claims against Amtrak for personal injury and related damages would be subject to binding arbitration.  Plaintiffs filed their opposition to the Motion on September 22, 2025, and Amtrak filed its reply in further support of the Motion on October 6, 2025.  The Motion is now ripe for review.

## II.   **APPLICABLE STANDARD**

The threshold issue is which standard of review applies to this case—the motion to dismiss standard or the motion for summary judgment standard.  Plaintiffs argue that the 12(b)(6) standard cannot apply because "Plaintiffs' Complaint lacks the requisite clarity to establish on its face that the parties agreed to arbitrate"—"[n]owhere in Plaintiffs' Complaint does it hint that Ms. Flynn purchased a ticket from Amtrak, that Plaintiff entered into an agreement, or even knew of or was subject to the bounds of an arbitration agreement."  *See* Opp. at 8.  In reply, Defendant does not seem to dispute that the Rule 56 standard applies, maintaining that "[t]he evidence demonstrates there is a valid and enforceable arbitration agreement."  Reply at 2.

The Federal Arbitration Act ("FAA") provides the legal basis for motions to compel arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  In deciding a motion to compel arbitration, the standard of review that the Court must apply depends on "whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents."  *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774-76 (3d Cir. 2013)).  The Court applies the Federal Rule of Civil Procedure 12(b)(6) motion to dismiss standard "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Guidotti*, 716 F.3d at 776 (internal quotations omitted).  But when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  *Id.* (internal quotations omitted).  In that case, the Court applies the summary judgment standard set forth in Federal Rule of Civil Procedure 56.  *See id.* at 774.

The Third Circuit clarified *Guidotti* in *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314 (3d Cir. 2024), in which it addressed the question of whether limited discovery is required before a Court can apply the Rule 56 standard.  There, the Third Circuit rejected the suggestion that *Guidotti requires* discovery before a court applies the summary judgment standard, and held instead that "discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement."  *Young*, 119 F.4th at 320.

I hold that the proper standard of review is the Rule 56 summary judgment standard.[1]  Upon review of the Complaint, it is clear it does not reference an arbitration agreement, let alone the

---

[1] Plaintiffs submit that "[A] Rule 56 analysis is only triggered when the Court finds that arbitrability is established on the face of the complaint but where the plaintiff sets forth competing evidence that they did not intend to be bounds by the terms of the arbitration provision," citing *Guidotti*.  *See* Opp. at 10.  But they fail to acknowledge the

purchase of a ticket that Defendant claims was the channel by which Ms. Flynn agreed to arbitrate. Because "the complaint and its supporting documents are unclear regarding the agreement to arbitrate," *see Guidotti*, 716 F.3d at 776, the summary judgment standard will apply, *see also Young*, 119 F.4th at 319 (holding that the District Court correctly determined that the Rule 56 summary judgment standard applied because the complaint made no reference to the arbitration agreement, did not attach the agreement as an exhibit, and did not base the claims on the existence of the agreement).

### III.   <u>MOTION TO COMPEL ARBITRATION PURSUANT TO RULE 56</u>

The next issue is whether the Court should compel arbitration, applying the Rule 56 summary judgment standard, which requires the movant to show "that there is no genuine dispute as to any material fact." *See* Fed. R. Civ. P. 56(a). "[B]efore compelling arbitration, a court will typically determine that '(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement.'" *Young*, 119 F.4th at 318 (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

#### A.  Whether There is an Agreement to Arbitrate

Plaintiffs argue that to the extent the Court determines a Rule 56 analysis is warranted, "genuine issues of material fact exist as to whether an enforceable arbitration agreement exists which require discovery." Opp. at 10.

---

second path a District Court may follow—"if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability." *See Guidotti* at 776 (internal quotations omitted).  Nor do Plaintiffs acknowledge the Third Circuit cases clarifying *Guidotti* and holding that discovery is not mandatory in the absence of a factual dispute as to arbitrability. *See, e.g.*, *Young*, 119 F.4th at 319-20.  This error is fatal to Plaintiffs' argument that the Rule 56 analysis is not triggered, as the Complaint here does not specifically reference the arbitration agreement, making the Complaint "unclear regarding the agreement to arbitrate" and thus implicating the Rule 56 standard, so long as there is not a factual dispute into the agreement to arbitrate.

### i. *Whether Ms. Flynn Checked the Box Agreeing to Amtrak's Terms and Conditions*

Plaintiffs take issue with the evidence Defendant submits in an attempt to establish the existence of an agreement to arbitrate. In its Motion to Compel, Defendant attaches as exhibits Ms. Flynn's Passenger Name Reservation ("PNR"), *see* Mot. at Ex. B, Defendant's Terms and Conditions Version 2.9.22, *see* Mot. at Ex. C, and the Declaration of Sunil Tewari, Defendant's Vice President, Digital Technology Revenue and Customer Experience Technology, *see* Mot. at Ex. D.

In his Declaration,[2] Mr. Tewari states that in order to purchase a ticket from Amtrak on its website, mobile website, or app, customers must affirmatively accept Amtrak's Terms and Conditions, which include an agreement to arbitrate claims between the customer and Defendant or its host railroads. *See* Mot. at Ex. D, ¶ 5. Before customers can complete ticket purchase, they must click a box affirming that they "have read and agree to the terms and conditions, including the binding arbitration agreement," and they cannot complete their purchase until they have clicked that box. *Id.* at ¶¶ 6-7. After purchasing a ticket, passengers are sent an e-mail receipt confirming their purchase and including a statement referencing the terms and conditions and arbitration agreement, and providing a link to the terms and conditions. *Id.* at ¶ 8.

Mr. Tewari reviewed Ms. Flynn's PNR and found that it indicated that on June 19, 2023, Ms. Flynn purchased one ticket to travel round trip from Lancaster to Philadelphia, leaving on July

---

[2] I find Mr. Tewari's declaration to be reliable. Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, Mr. Tewari's declaration affirmed that his declaration was based on "personal knowledge" and his "review of business records and files available to [him] and kept in Amtrak's ordinary course of business." *See* Mot. at Ex. D, ¶ 1. He further declared that his duties involve "oversee[ing] the platform on which passengers purchase tickets online and through Amtrak's mobile app" and "oversee[ing] the technological solution delivery of the Terms and Conditions enhancements, and the technological platform on which passengers agree to the Terms and Conditions prior to purchasing Amtrak tickets online or through the app," and that he is "an authorized custodian of Amtrak's records pertaining to passenger sales." *Id.* at ¶ 3. I am satisfied that Mr. Tewari had sufficient personal knowledge to support the facts in his declaration.

6, 2023 and returning on July 15, 2023. *Id.* at ¶ 9. He also stated that while purchasing this ticket, Ms. Flynn "affirmatively clicked the box stating that she read and agreed to the Terms and Conditions," which would have been version 2.9.22 of the Terms and Conditions based on Defendant's records. *Id.* at ¶¶ 10-11.

Plaintiffs provide no facts to rebut the facts set forth in Mr. Tewari's declaration. Rather, they state that "the terms and conditions Amtrak attaches to its motion is merely from one of its many website pages with absolutely no indication that Ms. Flynn received, reviewed, or signed anything agreeing to the terms, or any proof as to how Ms. Flynn was confronted with or provided these terms," *see* Opp. at 11, seemingly failing to acknowledge Mr. Tewari's declaration setting forth the precise manner in which the online ticket purchase process presents purchasers with its terms and conditions as a requirement to proceed with the purchase.

Indeed, in Defendant's Statement of Material Facts appended to its Motion to Compel, it sets forth the same set of facts attested to by Mr. Tewari concerning the online ticket purchase process and the fact that Ms. Flynn "affirmatively clicked the box stating that she read and agreed to the Terms and Conditions version 2.9.22 when she purchased her ticket on June 19, 2023." See ECF No. 10-3 at ¶¶ 7-9, 13. Plaintiffs deny these assertions in their response to Defendant's Statement of Material Facts, not with contrary facts, but with the statement that "The ticket purchased by Ms. Flynn contains absolutely no reference to arbitration or the Amtrak terms and conditions. . . . By way of further response, the parties have not conducted discovery on the validity and/or scope of the arbitration agreement at the time of this filing. It is specifically denied that this provides Amtrak with a right to its requested relief and any mischaracterization thereof is specifically denied." *See* Opp. at 22-23, ¶¶ 7-8, 13. It is not enough for Plaintiffs to make the general denial of these facts and instead rely on the fact that the ticket itself did not reference arbitration or the Amtrak Terms and Conditions. Indeed, because the Court is applying the

summary judgment standard, Plaintiffs "must do more than rest upon mere allegations, general denials, or vague statements. . . . Rather, [they] must identify specific facts . . . that contradict those offered by the movant." *Crescenz v. Penguin Grp. (USA), Inc.*, 561 F. App'x 173, 176 (3d Cir. 2014). I fail to see how targeted discovery would reveal facts to contradict those asserted by Defendant, namely that Ms. Flynn affirmatively checked the box stating that she has read the Terms and Conditions, which include the agreement to arbitrate. Ms. Flynn is at an informational advantage here—indeed, she would be the one to know, for example, if someone else purchased the ticket for her, or if she purchased the ticket some way other than online or in the Amtrak mobile app, which could plausibly complicate the issue of her affirmative consent to the Amtrak Terms and Conditions. *See, e.g.*, *Zayanderoudi v. Nat'l R.R. Passenger Corp.*, No. 22-cv-2455, 2023 WL 4744746, at *5 (D. Md. July 25, 2023) ("[I]t is unclear what meaningful discovery Plaintiff might take. She was the person who bought the ticket and agreed to Amtrak's Terms and Conditions."). For me to hold that such speculative facts would preclude a motion to compel arbitration pursuant to the Rule 56 standard would run contrary to the Third Circuit's rule that "an inference based upon a speculation or conjecture does not create a material factual dispute." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 837 F.3d 231, 235 (3d Cir. 2016) (internal quotation omitted); *see also Simensky v. Experian Info. Sols., Inc.*, No. 25-1045, 2025 WL 3754509, at *2-3 (3d Cir. Dec. 29, 2025) (non-precedential) (holding that company's declaration that a plaintiff clicked a button to create an account that acknowledged acceptance of terms and conditions was sufficient to show acceptance of an agreement to arbitrate where plaintiff offered no factual rebuttal).

Plaintiffs repeatedly raise the issue that the ticket itself does not reference any arbitration agreement or Amtrak's terms and conditions. This may be true, but it does not refute the fact that in order to *purchase* that ticket, Ms. Flynn was required to go through the affirmative process of clicking a box to indicate that she read and agreed to Amtrak's Terms and Conditions.

I therefore hold that there is no factual dispute as to whether Ms. Flynn affirmatively checked the box on Amtrak's website during her ticket-purchasing process in which she indicated that she had read and agreed to Amtrak's terms and conditions.

### ii. Whether the Clickwrap Agreement Created a Valid Contract

Plaintiffs next take issue with the so-called clickwrap agreement by which Ms. Flynn agreed to Defendant's Terms and Conditions, including the agreement to arbitrate, arguing that the requisite elements of contract formation are not met.

In determining whether a valid arbitration agreement exists, Courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Under Pennsylvania law, the elements of an agreement are: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration." *Zabokritsky v. JetSmarter, Inc.*, No. 19-cv-273, 2019 WL 2563738, at *3 (E.D. Pa. June 20, 2019).

At issue here is a clickwrap agreement—an "online agreement[] where users must click on an acceptance after being presented with terms and conditions." *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017). "Courts in this district have regularly held 'that "clickwrap" agreements manifest sufficient agreement to the terms in the contract.'" *Pricharda v. Checkr, Inc.*, No. 22-cv-3180, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022) (internal citations omitted) (gathering cases). In proving that a user gave meaningful assent so as to enter into a contract with a website operator, the operator "can show that a consumer has actual knowledge of the agreement" or, if "the operator cannot show actual knowledge, 'an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those

8

terms.'" *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025) (internal citations omitted).

I find that Ms. Flynn manifested her assent to enter into the arbitration agreement when she clicked on the box indicating that she had read Amtrak's Terms and Conditions, which contains the arbitration agreement. Plaintiffs argue that Defendant has not shown that the clickwrap agreement was "reasonably conspicuous," relying heavily on *Chilutti v. Uber Techs., Inc.*, 300 A.3d 430 (Pa. Super. Ct. 2023), which has since been vacated and remanded, *see Chilutti v. Uber Techs., Inc.*, 349 A.3d 826 (Pa. 2026). In *Chilutti*, the Superior Court of Pennsylvania addressed whether a "browsewrap agreement" on Uber's website provided reasonably conspicuous notice of the terms to which the user was bound, and whether the consumer took action to unambiguously manifest assent to those terms.

Notwithstanding the fact that the decision in *Chilutti* has since been vacated and remanded because the Superior Court did not have jurisdiction to hear a collateral appeal of the trial court's decision on the motion to compel arbitration, *see Chilutti*, 349 A.3d 826, I find the Superior Court's reasoning unpersuasive, particularly because it pertained to a browsewrap agreement and not a clickwrap agreement. Browsewrap agreements are "at the other end of the spectrum" from clickwrap agreements, as they disclose terms "only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Indeed, *Chilutti* involved "lengthy and hidden browsewrap agreements," *see Eichlin v. GHK Co.*, 746 F. Supp. 3d 247, 255 (E.D. Pa. 2024), whereas here, a requirement for Ms. Flynn to proceed with purchasing her ticket involved affirmatively clicking on a box next to language indicating that she has "read and agree to the terms and conditions, including the binding arbitration agreement," with the phrase "terms and

9

conditions" hyperlinked in blue font.  *See* Reply at 7.  Courts have "routinely found" such clickwrap agreements enforceable.  *See Berman*, 30 F.4th at 856.[3]

Version 2.9.22 of Amtrak's Terms and Conditions contains an Arbitration Agreement, and because I find that Ms. Flynn manifested assent to agree to the Terms and Conditions, I hold that there is a valid agreement between the parties to arbitrate in this case.

### B.  Whether the Dispute Falls Within the Scope of the Arbitration Agreement

Plaintiffs submit that Defendant also fails to satisfy the second step of the motion to compel analysis—whether the dispute at issue falls within the scope of the arbitration agreement.  *See* Opp. at 14.

"Parties may delegate resolution of gateway issues to the arbitrator, so long as they clearly and unmistakably evidence their intent to do so."  *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-cv-5276, 2022 WL 2974713, at *5 (E.D. Pa. July 27, 2022) (citing *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021)).  And when the parties do so, "the courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).

The Arbitration Agreement as it appears in version 2.9.22 of Amtrak's Terms and Conditions provides in relevant part that "[t]he arbitration will be conducted before a single arbitrator under the Consumer Arbitration Rules of the American Arbitration Association ('AAA')."  *See* Mot. at Ex. C, p. 44.  Rule 7(a) of the AAA's Consumer Arbitration Rules in turn provides that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any

---

[3] Even were I to find that the agreement constituted some combination of a clickwrap and browsewrap agreement, because to purchase a ticket, a buyer must affirmatively check a box attesting that they read the terms and conditions, but those terms and conditions never appeared via a pop-up window and instead had to be accessed by clicking hyperlinked text, *see Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-cv-0648, 2024 WL 4476646, at *8 (E.D. Pa. Oct. 11, 2024), I would still hold that Ms. Flynn assented to its terms.  Ms. Flynn provides no facts to dispute that the terms and conditions were reasonably conspicuous.

objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." American Arbitration Association, Consumer Arbitration Rules, https://www.adr.org/rules-forms-and-fees/consumer/ (last visited May 6, 2026).

The Arbitration Agreement itself further provides that "the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable."

I thus hold that because of the Agreement's incorporation of the AAA's Consumer Arbitration Rules, which provide that the arbitrator has the power to rule on their own jurisdiction, including the scope of the arbitration agreement, as well as the Agreement's provision granting the arbitrator authority to resolve disputes relating to the Agreement's applicability, the issue of whether Ms. Flynn's claims are encompassed by the Arbitration Agreement is an issue for the arbitrator to decide.

### C.  Whether Ms. Flynn Knowingly and Voluntarily Waived Right to Jury Trial

Plaintiffs finally assert that the Arbitration Agreement violates Plaintiff's Constitutional right to a trial by jury because Ms. Flynn did not knowingly and willingly waive that right. *See* Opp. at 16-20.

As noted in Section B, *supra*, the Arbitration Agreement delegates to the arbitrator any questions of the "validity," "enforceability," and "unconscionability" of the Arbitration Agreement.  Because Ms. Flynn's argument as to the Constitutionality of any waiver of her right to trial by jury goes to the Agreement's validity, enforceability, or unconscionability, that issue is left for the Arbitrator to decide.

IV.    **MR. FLYNN'S CLAIMS**

Mr. Flynn brings two claims against Defendant:  negligent infliction of emotional distress and loss of consortium.  Plaintiffs do not allege, nor does Defendant dispute, that Mr. Flynn did not purchase an Amtrak ticket and did not therefore enter into an Arbitration Agreement with Defendant.

I will stay Mr. Flynn's claims against Defendant pending the outcome of the arbitration of Ms. Flynn's claims.  Even to the extent either of Mr. Flynn's claims are derivative of Ms. Flynn's claims, "[a]rbitration cannot be compelled against a plaintiff that did not sign an arbitration agreement based on the fact that such a separate claim is derivative of injuries to a party who agreed to arbitration."  *McCrossin v. Comcast Spectacor, LLC*, 311 A.3d 1115, 1123, *reargument denied* (Apr. 15, 2024), *appeal denied*, 329 A.3d 582 (Pa. 2024).  *See also Loyko v. Old Orchard Health Care Ctr.-Easton, PA, LLC*, No. 24-cv-0360, 2024 WL 1096813, at *4 (E.D. Pa. Mar. 13, 2024) ("While the arbitration agreement was purposefully written for broad application, it is still just a contract which cannot bind non-parties.  To hold otherwise would impermissibly 'elevate [arbitration agreements] over other forms of contract.'") (internal citations omitted).  Mr. Flynn's claims for negligent infliction of emotional distress and loss of consortium may be derivative, but they are distinct causes of action nonetheless.  They are therefore stayed.

V.    **CONCLUSION**

For the reasons discussed above, I will grant Defendant's Motion insofar as it seeks to compel arbitration of Ms. Flynn's claims, and I will deny it as to Mr. Flynn's claims, which are stayed pending Ms. Flynn's arbitration.  An appropriate Order follows.